By the Court:

Freedman, J.
The contract provides that the contractors, Dickerson & Sickels, should build, furnish, and erect, in full *32 and complete order, and according to certain proposals and specifications therein referred to, two square engines, with pumps, boilers, and all other fixtures and apparatus necessary to put the said engines and machinery in full and complete order for certain services to be performed by them, and that they should assume every risk and accident “ as their own responsibility.” The contractors bound themselves absolutely to furnish a completed contract in all particulars, and that the entire machinery should, upon actual test, successfully perform the stipulated services. By the express terms of the contract, the engineer of the plaintiffs was at liberty at all times to require the rejection of any work which he should deem inferior, and of any material which he might deem of improper or inferior quality or strength for the completion of the contract in the best manner, and to require the substitution of work and material which in his judgment would be proper and adequate. Provision was also made in the contract for the payment of advances, as the work progressed, based upon the relative value of the work furnished to the whole sum. The contracting parties evidently intended to leave a great many things open for subsequent arrangement between the contractors on one side and the engineer of the plaintiffs on the other side; they evidently foresaw that alterations in the contract even, might become necessary during the progress of the work. At any rate, the bond executed by the sureties, upon which this action is brought, expressly authorizes alterations to be made in the contract by the parties thereto without any qualification or reserve.
As a part of the entire machinery to be built and furnished, the contractors were bound to build and furnish certain boilers, which should bfe capable of bearing a cold-water pressure of two hundred pounds to the square inch. At the time the contract was signed, there was, as the learned justice presiding at the trial charged, and to which proposition no exception was taken by either side, no stipulation or condition in force by which Dickerson & Sickels were obliged to have the boilers built in any particular place, or by any particular person. They were entirely free to have them built by whomsoever they pleased, and were *33 bound to have them well and properly built. They subsequently subcontracted with the firm of Johnson & Dunham, of the city of Detroit, for the building of the boilers, by written contract, bearing date January 27,1857, duly signed and executed by Dickerson & Sickels, as well as Johnson & Dunham. By that contract, the latter agreed, among other things, to make the said boilers according to certain drawings, which the evidence shows were agreed upon between Dickerson & Sickels and Mr. Houghton, plaintiffs’ engineer, and to warrant them to be tight under a cold-water pressure of two hundred pounds to the square inch, and to have them ready by a certain time, subject to the approval of plaintiffs’ engineer. Dickerson & Sickels, on their part, agreed to pay to the said Johnson & Dunham for the said boilers, when delivered and set up and proved to be tight, to the satisfaction of the engineer of the Waterworks of the City of Detroit, the sum of eleven and one half cents per pound for every pound weight of said boilers, in the following manner, to wit:
Fifty per centum of the whole sum during the construction of said boilers, whenever the engineer of the said Waterworks shall approve the work as far as it has gone, and the balance, fifty per centum, when the boilers are delivered according to contract and satisfactory to the engineer of the Waterworks aforesaid.
When the boilers were said to be completed by the boilermakers, they were subjected to the test pressure; they leaked and were rejected by plaintiffs’ engineer as insufficient. After that they were made sufficiently tight by men employed by the principal contractors, Dickerson & Sickels, for that purpose to stand, and they did successfully stand, a second test, and Mr. Houghton thereupon accepted them as satisfactory. It subsequently turned out, however, that although they had thus stood the test prescribed by the original contract, namely, the cold-water test, they could not during actual work stand the fire test, and' their insufficiency in this respect was one of the principal reasons assigned by the sureties for the general non-per *34 formance of the contract on the part of the principal contractors. Now the court below charged that so far as Dickerson & Sickels were concerned, the alleged approval or acceptance by the plaintiffs’ engineer during the progress of the undertaking, "of any portion of the engines, boilers, machinery, or apparatus, prior to the completion of the whole, did not relieve Dickerson & Sickels from their obligations, that when completed, the engines, pumps, boilers, and other fixtures and apparatus, should perform the stipulated duty; but at the same time also charged, that so far as the sureties were concerned, it was otherwise; that the alleged approval by Houghton of the boilers, or of any of the work or material of them, relieved the sureties, and that this was so, if the acceptance took place for Dickerson & Sickels only, under an authority derived from them, and not for the plaintiffs. This part of the charge was in effect a direction for the jury to bring in a verdict for the defendants, and a compliance with this direction rendered it unnecessary, as the evidence stood, that the jury should consider, any other question submitted as a question of fact. According to this ruling, the contractors could appoint an agent, and by that agent do an act which would release their own sureties, and destroy the plaintiffs’ right of action, a result which they could not .accomplish by any act of their own. This is clearly error. There was a great conflict of evidence upon the following points among other questions:
1. Whether or not Dickerson & Sickels were improperly influenced by Houghton, plaintiffs’ engineer, to award the contract for building the boilers to the firm of Johnson & Dunham, at Detroit.
2. Whether or not Houghton, in order to effect this award, agreed to be responsible that the boiler-makers would make the boilers required in all respects perfect and in full compliance with and satisfaction of the original contract.
3. Whether or not Houghton, in all which he did in regard to the contract with Johnson & Dunham, acted at the request and for -the accommodation of Dickerson & Sickels.
*35 4. Whether or not material alterations were made by Houghton in the plans for the boilers without the full and hearty acquiescence of Dickerson and Sickels.
5. Whether the acceptance of the boilers by Houghton was an acceptance on behalf of Dickerson & Sickels, or on behalf of the plaintiffs, and, if on behalf of the latter, whether it was an absolute one, or made, as he testified, as all other acceptances of parts of the work during its progress were made by him, namely, for the sole purpose of making it the basis for an estimate for advances to be made under the original contract.
Upon all these questions evidence was permitted to be given both ways. A great portion of that evidence was received against the objections of the plaintiffs, and grave doubts may be well entertained as to the admissibility of most of such evidence, especially as it is very questionable whether Houghton could, under any circumstances, bind the plaintiffs by mere declarations, admissions, engagements, or acts on his part made and done outside of the line of the particular business, for which he was employed by the plaintiffs. There is no evidence that the plaintiffs ever had any thing to do with the giving of the sub-contract to Johnson & Dunham, or that they had ever heard of any arrangement between Houghton and Dickerson & Sickels in relation to it, or had in any way authorized it, and I do not find that the defendants make any such claim. But assuming that the whole of the evidence thus received under plaintiffs’ objection was properly admitted and was competent and material to the issues involved in the case, it follows as a necessary consequence that clear issues of fact were raised thereby for the determination of the jury under proper instructions from the court, and that it was error for the court, after the evidence had been thus received, to determine as matter of law upon the same, that ant acceptance or approval of the boilers by Houghton, no matter in what capacity or in what manner or for what purpose, or of any of the work or material of them, relieved the defendants as sureties from all liability whatever, although it did not relieve the principal contractors from their obligation, that, when *36 completed, the entire machinery should successfully perform the stipulated service. Indeed I cannot perceive how the defendants as sureties could be thus held relieved even irrespective of the question of alterations in the contract, while the contractors remained bound.
Again the learned justice presiding at the trial appears to have tried the case throughout upon the theory that any subsequent alteration in the contract, even if made in perfect good faith and for the benefit of the contractors, if in point of fact made without the knowledge and consent of the sureties, had the effect to discharge the latter in the same manner as they would have been discharged, in case their bond did not provide for such alterations. It is true that in deference to a request made by plaintiffs’ counsel, the judge charged the following propositions :
1. By the condition of the bond, the defendants were required to perform and abide by any alterations in the contract with the plaintiffs, and the defendants were not discharged by such alterations, but were expressly bound by them; and
2. In determining the question whether Dickerson & Sickels, in fact, performed their contract with the plaintiffs, and whether the plaintiffs did any thing which excused Dickerson & Sickels from such performance, the jury should exclude any consideration of the defendants’ position as sureties, and determine sueh questions upon the evidence alone, precisely as they would upon the same evidence if Dickerson & Sickels were defendants.
But in his subsequent general charge to the jury, the judge used the following language :
“ The first question in order of consideration for you to determine is, whether material alterations have been made by the principal contractors (the Commissioners of the Detroit Waterworks and Dickerson & Sickels) without the knowledge or consent of these sureties. If you come to the conclusion that such alterations have been made, then your work is done, and you will find a verdict for the defendants.”
And in his closing remarks the judge again directed the jury, if they should find that material alterations took place in the *37 boilers, or cmy portion of the work, between the contracting parties, Dickerson & Sickels, and the Commissioners of the Detroit Waterworks, without the knowledge and consent of the sureties, or that there was any interference on the part of the plaintiffs without the consent of the sureties, to stop there and find a verdict for the defendants.
These remarks were not confined to such alterations and such interference as prevented or .were calculated to prevent a proper performance of the contract; but according to them the jury was left free to render a verdict for the defendants for any alteration or cmy interference, without regard to its effect or consequence upon the work, or the performance of it by the contractors. This broad statement of a rule generally applicable to undertakings by sureties, cannot be reconciled with the special clause contained in the bond in this action, by which the defendants became responsible for the due performance by Dickerson & Sickels of .the contract, and cmy alterations which may be made therein. Therefore, if it was not error so to charge without any qualification of the language at the time, the charge was at least calculated to mislead the jury.
The views so far expressed render it unnecessary to pass upon the other exceptions taken by the plaintiffs.
The verdict should be set aside, and a new trial granted, with costs to abide the event.